UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHARRON HOLMES,

Plaintiff,

v.

J.P. MORGAN CHASE NATIONAL CORPORATE SERVICES, INC.

Defendant.
_________________________________/

Case No. 09-10642

HON. SEAN F. COX
United States District Judge

OPINION & ORDER

Plaintiff Sharron Holmes ("Holmes" or "the Plaintiff") filed this Michigan state-law age discrimination claim in the Wayne County, Michigan, Circuit Court on November 19, 2008. Defendant J.P. Morgan Chase National Corporate Services, Inc. d/b/a Chase ("Chase") removed this action pursuant to the Court's diversity jurisdiction on February 20, 2009 [Doc. No. 1]. The matter is before the Court on Chase's Motion for Summary Judgment [Doc. No. 11]. In light of both parties' request that the Court cancel oral argument on this motion, the Court declines to hold oral argument on the motion pursuant to Local Rule 7.1(e)(2). For the reasons below, the Court **GRANTS** Chase's motion [Doc. No. 11].

BACKGROUND

Ms. Holmes was originally hired by National Bank of Detroit ("NBD"), a predecessor to Chase, on March 20, 1973 as a teller. [Holmes Dep., Def.'s Ex. 1, Doc. No. 11, p.96]. Ms. Holmes was promoted to the position of branch manager for NBD in 1996, and from 1996 until 2004 was the branch manager of the Fort Junction branch in Detroit, Michigan. *Id*. at pp.96-97.

Ms. Holmes generally received sub-par performance reviews in her role as branch manager at the Fort Junction branch: in 1999 and 2003, she received a "needs improvement" rating from NBD, and in 2001 received a review stating that each and every category Ms. Holmes was evaluated upon had slipped from the prior year. *Id*. at pp.103-106. After Chase's acquisition of NBD as part of their merger with Bank One, Chase rated the Fort Junction branch as the worst performing branch in its peer group of similarly-situated branches. *Id*. at p.108.

In early 2005, Chase transferred Ms. Holmes to the West Chicago/Telegraph branch, were she remained until her termination. *Id*. at p.97. During periodic audits of the West Chicago/Telegraph branch in 2005 and in 2006, through which Chase evaluates the performance of bank branches, Ms. Holmes' work was again cited as below expectations. *Id*. at p.98; *see also* Chase Bank Audits, Def.'s Ex. 2. The West Chicago/Telegraph branch also failed to meet its target goals on all sales campaigns in the year 2005. *Id*. at p.115. Ms. Holmes acknowledged that these were evidence of operational problems within her branch, and that they reflected poorly on her abilities as a branch manager. *Id*. at p.99.

In response to the sub-par performance of the West Chicago/Telegraph branch under Ms. Holmes' leadership, Chase transferred an experienced assistant manager into the branch in 2006 to try and clean up branch operations. *Id*. at p.122. Rather than solve the problem, however, the West Chicago/Telegraph branch's sales numbers dropped even further in 2006. *Id*. at p.116-117. At the end of 2006, Plaintiff's supervisor, District Manager Kathy Johnson, placed Ms. Holmes on a performance improvement plan and told Ms. Holmes that her performance needed to improve. *Id*. at pp.118-19; *see also* Def.'s Ex. 3.

In April of 2007, Ms. Johnson left employment with Chase, and Vanessa Robinson

("Robinson") became Ms. Holmes' new District Manager on or about May 15, 2007. *Id*. at p.128. Ms. Robinson's supervisor, Market Manager Manny Alia ("Alia"), also started in his position with Chase at roughly the same time as did Ms. Robinson. *Id*. at p.130.

At that time, Ms. Holmes' branch was still performing below expectations, and Ms. Robinson and Mr. Alia addressed the status of the West Chicago/Telegraph branch with Ms. Holmes during a meeting in May of 2007. *Id*. at p.132. When asked why her branch was performing so poorly, Ms. Holmes stated that she only had one Personal Banker at her branch instead of the usual two. When pressed by Ms. Robinson and Mr. Alia, however, Ms. Holmes admitted that she had been authorized to hire another Personal Banker five months earlier when the prior Personal Banker had been discharged, but that Ms. Holmes had not taken any steps to fill the position. *Id*. at p.124. At that meeting, Mr. Alia reiterated that Ms. Holmes had the authority to hire a second Personal Banker for the West Chicago/Telegraph branch, and also granted Ms. Holmes the authority to hire a *third* such employee. *Id*. at pp.134, 134. Though Ms. Robinson herself hired a second Personal Banker for the branch on her own [*See* Robinson Dep., Def.'s Ex. 5, Doc. No. 11, p.10], Ms. Holmes took no steps to fill the third Personal Banker position at her branch. [Pl.'s Dep., Def.'s Ex. 1, Doc. No. 11, p.135].

Ms. Holmes took a medical leave from June 4, 2007 until July 9, 2007. *Id*. at pp.136-37. Around that same time, Ms. Holmes alleges that she began to suspect that her supervisors were persecuting her not because of her poor job performance, but due to her age:

> Q: Why do you believe that [your supervisors were persecuting you because of your age]?
> A: I believe that based on a couple of things. One was rumor that they were actively getting rid of employees, branch managers who'd been around a long time, because it would save the bank some money.
> Q: And what was the second thing?

A: I had received information from other bank employees when I was on my medical leave, that people were already deciding who would get my branch.
Q: Okay. So those were the two things that - -
A: (Interposing) And I knew for a fact that I was the oldest branch manager in the Detroit group, both districts.

[Pl.'s Dep., Def.'s Ex. 1, Doc. No. 11, pp.70-71]. When pressed regarding the alleged "rumors" that were circulating regarding Chase's penchant for terminating older employees, Ms. Holmes admitted that these merely amounted to the unsupported speculation of her peers:

Q: Okay. Let's start with the rumor. You said that there was a rumor going around?
A: Um-hum (affirmatively).
Q: What was the source of the rumor?
A: *Oh, just, you know, a group of managers would get together after a meeting and have lunch or something* and they would say, you know, this is what I heard, that, you know, if you're fifty years old and you make fifty thousand dollars, there's a fifty percent chance you're going to be out the door soon.
Q: Okay.
A: Because that's the easy way they can make the numbers look better. When they take your salary out of the equation, it's going to automatically bump up the numbers so that the market looks better than it looked.
Q: Okay.
A: So these were the conversations that were being had.
Q: Okay. *So these were just people, managers* - -
A: (Interposing) *Yeah*.
Q: - - *sitting around speculating*?
A: *Yeah*. I can't say a number or something that said that, but. . . .
Q: So these were your fellow branch managers?
A: Yeah, peers, um-hum (affirmatively).

*Id*. at pp.71-72 (emphasis added). Ms. Holmes was also unable to offer any objective evidence supporting her assertion that her branch was being "divided up" during her absence while on medical leave:

Q: All right. And then you said you received information while you were on medical leave?
A: Yes.

Q: Who gave you this information while you were on medical leave?
A: Let's see. I talked to a couple of people. I'm not sure. It was - - I believe it was someone in my office. I'm not sure what person it was. It was one of two people.
Q: And what was the information that you received?
A: That people were discussing who might get my job. There was a young lady there that was a trainee, and she hadn't been placed.
*****
Q: A lot of the employees at the branch are debating who might replace you here?
A: No. Other people in the bank.
Q: Like who?
A: I guess other managers or. . . .
Q: Other peers of yours?
A: People in - - yeah, peers, or people in other departments, like the sales coach or the business banker person that assigned to the branch, or - - it's like a whole team of people that worked for the branch manager.
Q: *So you're kind of getting this secondhand then?*
A: *Right*.
Q: *So you don't really know who was saying anything?*
A: No.
Q: They're just saying there's a rumor here - -
A: (Interposing) Right.
Q: - - that you were - -
A: (Interposing) And they called me because they were concerned, because they thought that I would not come back this time, because I'd been off before with medical issues. But they were concerned that I wasn't coming back.
Q: Okay.
A: *So they called to say this is what they heard.*
Q: Okay.
A: That kind of thing.
Q: So we don't remember who called you and gave you this information, right?
A: It was one of two people at my branch that I'm sure of.
Q: Okay.
A: Mary or Hazel.[1]

*Id*. at pp.72-75 (emphasis added).

On her first day back from medical leave, Ms. Holmes failed to appear at a mandatory manager meeting. When Ms. Robinson called Ms. Holmes to inquire about her absence, Ms.

[1] Nowhere in the exhibits provided to the Court by either party does a "Mary" or a "Hazel" corroborate these conversations.

Holmes told Ms. Robinson that she was "overwhelmed." *Id*. at p.141.

On July 20, 2007, Ms. Robinson made an unannounced visit to the West Chicago/Telegraph branch to observe the branch's performance. *Id*. at pp.152-53. On that day, Ms. Robinson observed Ms. Holmes fail to conduct a morning "huddle" meeting of the employees before the branch opened, a meeting required every morning pursuant to Chase policy. *Id*. at p.156; *see also* Robinson Dep., Def.'s Ex. 5, pp.25-27. Ms. Robinson also observed that Ms. Holmes did not have her staff involved in a "campaign call," soliciting new business for the branch through cold-calls, also required by Chase policy. *Id*. As a result, when Ms. Robinson and Mr. Alia again met with Ms. Holmes on July 24, 2007, Ms. Holmes was placed on another performance improvement plan and given a written warning - her second action plan in less than nine months. *Id*. at p.157, *see also* Def.'s Ex. 7.

The July 24, 2007 action plan required, among other things, for Ms. Holmes to "show coach" her employees - i.e., modeling effective sales and customer service techniques for her employees to emulate. *Id*. at pp.159-160. Ms. Holmes was also instructed to "work the lobby" during business hours, attending to the customer service needs of branch customers. *Id*.

When Ms. Robinson again stopped by the West Chicago/Telegraph branch only one week later - on July 31, 2007 - she observed that Ms. Holmes was still not "show coaching" her employees and not "working the lobby." *Id.* at pp.161-63. Ms. Holmes candidly admitted that she was not following the action plan at that time. *Id*. at pp.171-72.

As a result, Ms. Robinson prepared a recommendation for Ms. Holmes' termination, which was approved by Mr. Alia effective August 3, 2007. [*See* Def.'s Ex. 8]. The reasons given for Ms. Holmes' termination included the poor results of West Chicago/Telegraph branch under

her leadership, including negative sales numbers and branch audits, as well as Ms. Holmes' lack of response to the July 24, 2007 action plan. *Id*. Both Ms. Robinson and Mr. Alia testified at deposition that Ms. Holmes' age was not a factor at all in her termination. [*See* Robinson Dep., Def.'s Ex. 5, Doc. No. 11, p.32; Alia Dep., Def.'s Ex. 9, Doc. No. 11, p.17].

At the time of her discharge, Ms. Holmes was fifty-three years old. [Pl.'s Dep., Def.'s Ex. 1, Doc. No. 11, p.10]. Following Ms. Holmes' discharge, Ms. Robinson transferred another Branch Manager, Celisa Jackson ("Jackson"), who at the time was thirty-six years old, to the West Chicago/Telegraph branch. [Robinson Dep., Def.'s Ex. 5, Doc. No. 11, p.27]. After transferring Ms. Jackson to the branch, its operational performance immediately improved. *Id*. at pp.29-30.

Following her discharge from Chase, Ms. Holmes filed a charge of age discrimination with the EEOC, who investigated her complaint and determined that there was insufficient evidence to support her claim. [Pl.'s Dep., Def.'s Ex. 1, Doc. No. 11, p.19]. Ms. Holmes filed the instant lawsuit in the Wayne County, Michigan, Circuit Court on November 19, 2008, which Chase removed to this Court based upon diversity jurisdiction on February 20, 2009. [*See* Notice of Removal, Doc. No. 1].

When asked to support her age discrimination claim with evidence, Ms. Holmes failed to come up with anything objective:

> Q: Okay, what evidence or facts do you rely upon to support your claim of age discrimination. . .? I think you indicated that you had gotten some rumors?
> A: Oh, the rumors and comments?
> Q: Right.
> A: And things like that?
> Q: Yeah, right, anything other than that?
> A: I guess aside from the fact that I was the last one standing, if you will, the

oldest person in the group - -
*****
Q: Anything else, ma'am?
A: Other than being the oldest one in the group?
Q: Yep.
A: I don't know. Sometimes I felt like it was a little different type of pressure being put on me in terms of doing it and do it now, because of that that I don't think my peers got this in talking to them. So basically those two things.
Q: All right.
A: *Other than a feeling, and rumor and innuendo, that's it. I don't have anything else that I can say about that.*
Q: Okay, Well who is it that you believe discriminated against you on the basis of your age?
A: I think it was Vanessa [Robinson] and Manny [Alia].
Q: Okay. Did Vanessa ever make any derogatory comments about your age?
A: No, not that I know of.
*****
Q: Are you aware of any derogatory comments that Manny Alia has ever made or - - regarding - -
A: (Interposing). No.
Q: - - your age or anyone else's age?
A: No.
Q: Okay, so its nothing they said?
A: No.

[Pl.'s Dep., Def.'s Ex. 1, Doc. No. 11, pp.172-74 (emphasis added)].

Following discovery, Chase filed the instant motion for summary judgment [Doc. No. 11] on October 26, 2009, in which Chase seeks dismissal of Ms. Holmes' complaint in its entirety.

STANDARD OF REVIEW

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the

pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).

ANALYSIS

Chase seeks dismissal of Ms. Holmes' case. For the reasons that follow, the Court **GRANTS** Chase's motion [Doc. No. 11], and dismisses this action in its entirety.

Ms. Holmes, who was fifty-three years of age at the time of her discharge from employment with Chase, brings her age discrimination claim under Michigan's Elliott-Larsen Civil Rights Act, M.C.L. § 37.201 *et seq*. That statute provides, in relevant part:

> An employer shall not do any of the following:
>
> > (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because or religion, race, color, national origin, age, sex, height, weight, or marital status.

M.C.L. § 37.2202(1)(a).

Michigan courts "have used the prima facie test articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*[, 411 U.S. 792 (1973)] as a framework for evaluating age-discrimination claims." *Town v. Mich. Bell Telephone Co.*, 455 Mich. 688, 695 (1997). First, the employee has the burden to bring forth a prima facie showing of age discrimination. *Id*. If the plaintiff meets their prima facie burden, the burden of production shifts to the employer, who must proffer a legitimate, nondiscriminatory reason for the employee's discharge. *Id*. Upon satisfaction of the employer's burden of production, the burden shifts back to the employee,

who:

> . . . must submit *admissible evidence* to prove that the employer's nondiscriminatory reason was not the true reason for the discharge and that the plaintiff's age was a motivating factor in the employer's decision. Thus, the employer must prove that the employer's explanation was a *pretext for discrimination*.

*Id*. at 697 (emphasis added).

In their instant motion for summary judgment [Doc. No. 11], Chase makes no argument against Ms. Holmes' prima facie case. Further, in her response brief [Doc. No. 13], Ms. Holmes does not dispute that Chase had a legitimate, nondiscriminatory motivation - i.e., Ms. Holmes' poor job performance - for Ms. Holmes' discharge. Rather, the instant motion centers around whether Ms. Holmes has proffered sufficient *admissible evidence* to raise genuine issues of material fact regarding whether Chase's proffered justification for Mr. Holmes' termination was a pretext for age discrimination. [*See* Def.'s Br., Doc. No. 11, pp.9-13; Pl.'s Br., Doc. No. 13, pp.6-7]. The Court holds that Ms. Holmes has failed to meet this burden.

Again, to successfully prove that Chase's explanation for her discharge was a pretext for age discrimination, Ms. Holmes "must submit *admissible evidence* to prove that the employer's nondiscriminatory reason was not the true reason for the discharge and that the plaintiff's age was a motivating factor in the employer's decision." *Town*, 455 Mich. at 697 (emphasis added).

Further, it is not enough for Ms. Holmes to simply raise a genuine issue of material fact regarding the pretextual nature of Chase's proffered reasons. Instead, Ms. Holmes "must not merely raise a triable issue that the employer's proffered reason was pretextual, *but that it was a pretext for age. . . discrimination*." *Lytle v. Malady*, 458 Mich. 153, 176 (1998) (emphasis added). The *Lytle* Court elaborated as follows:

> [A] plaintiff must prove discrimination *with admissible evidence*, either direct or circumstantial, *sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor* for the adverse action taken by the employer toward the plaintiff.

*Id*. (emphasis added). Michigan courts recognize three separate avenues by which a plaintiff can show pretext:

> A plaintiff can establish that a defendant's articulated legitimate, nondiscriminatory reasons are pretexts (1) by showing that the reasons have no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision.

*Feick v. County of Monroe*, 229 Mich. App. 335, 343 (1998).

In the instant case, Ms. Holmes argues that four different pieces of evidence raise genuine issues of material fact regarding the pretextual nature of Chase's decision to terminate her: 1) that Ms. Holmes' replacement "was treated differently than her, based upon her age," [Pl.'s Br., Doc. No. 13, p.6]; 2) that Ms. Holmes was terminated only a few months into Ms. Robinson's tenure as her supervisor; 3) Ms. Holmes' deposition testimony regarding "rumors" circulating among Chase employees; and 4) Ms. Holmes' subjective feelings that she was treated differently than other employees by Ms. Robinson and by Mr. Alia. Ultimately, none of this evidence satisfies Ms. Holmes' burden of establishing a genuine issue of material fact that Chase's decision to terminate her was a pretext for age discrimination.

I. <u>Alleged Disparate Treatment of Ms. Holmes' Successor</u>

Ms. Holmes argues that her replacement, Ms. Jackson, "was clearly treated differently than her, based on her age." [Pl.'s Br., Doc. No. 13, p.6]. She argues that her review for the year 2006 resulted in a rating of "meets expectations" in six of seven categories [*See* Holmes 2006 Review, Pl.'s Ex. E, Doc. No. 13], and that this review's outcome was roughly the same as that

Ms. Jackson received on her 2008 review [*See* Jackson 2008 Review, Pl.'s Ex F, Doc. No. 13]. Thus, Ms. Holmes argues as follows:

> Ms. Jackson's results with this Branch were virtually the same was [*sic*] Ms. Holmes's results. However, Ms. Holmes was terminated without being given the chance to finish her 30-day review, hiring another personal banker and assistant manager, and improving her numbers. Ms. Jackson was eventually given the opportunity to receive additional staffing and improve her performance without being terminated.

[Pl.'s Br., Doc. No. 13, p.7].

None of this, however, establishes that Chase's proffered reason for terminating Ms. Holmes was pretextual, let alone a pretext for age discrimination. First, "[t]he isolated fact that a younger person eventually replaces an older employee is not enough to permit a rebuttal inference that the replacement was motivated by age discrimination." *Hedrick v. Western Reserve Care System*, 355 F.3d 444 (6th Cir. 2004). This is especially true here, as Ms. Holmes admitted in her deposition *that she was the oldest remaining branch manager in the area*. [*See* Pl.'s Dep., Def.'s Ex. 1, Doc. No. 11, p.71]. Logically, therefore, unless Chase went outside of its available work force to fill Ms. Holmes' position, her replacement would necessarily be younger than her.

Furthermore, Michigan courts have held that pretext is not established through comparisons to a similarly-situated employee where the other employee's "performance was proportionately higher." *Town*, 455 Mich. at 701. In this case, it is undisputed that Ms. Jackson immediately achieved better results in the West Chicago/Telegraph branch than did Ms. Holmes.

Nor does Ms. Holmes establish pretext by comparing her own 2006 evaluation with that of Ms. Jackson in 2008. Quite simply, that Ms. Holmes received satisfactory ratings in 2006

misses the point: outside of 2006, Ms. Holmes had consistently received unsatisfactory ratings, *and her ratings went back down again in 2007*. Ms. Jackson's insubordination - i.e., her admitted failure to follow direct orders from her superiors as outlined in the July 24, 2007 action plan [*See* Pl.'s Dep., Def.'s Ex. 1, Doc. No. 11, pp.171-72] - further undermines her arguments.

Finally, despite Ms. Holmes' arguments to the contrary, there is no evidence that Chase gave Ms. Jackson any more resources than Chase made available to Ms. Holmes. While Ms. Jackson did have a two additional Personal Bankers at her disposal than did Ms. Holmes, one of those employees was hired - by Ms. Robinson after the May 2007 meeting - *during Ms. Holmes' tenure*, and the other employee was only unavailable to Ms. Holmes *because Ms. Holmes admittedly failed to hire someone to fill the position*.

Even assuming, *arguendo*, that Ms. Holmes *could* show that Chase's reasons for replacing her with Ms. Jackson were pretextual, Ms. Holmes has made no showing that those reasons *were a pretext for age discrimination*. Aside from the fact that Ms. Jackson was thirty-six at the time the fifty-three year old Ms. Holmes was terminated - a fact that, in and of itself under *Hedrick* is irrelevant - Ms. Jackson has no evidence that her age had anything to do with Chase's decision to terminate her. Such evidence does not establish a pretext for age discrimination.

II. <u>Ms. Holmes' Termination After Only a Few Months Under Ms. Robinson</u>

Ms. Holmes also argues that the short period of time she worked under Ms. Robinson demonstrates the pretextual nature of Chase's decision to terminate her:

> Additionally, it is notable that Ms. Robinson became Ms. Holmes' district manager in June 2007, only a couple [of] months before Ms. Holmes was terminated. Ms. Robinson clearly did not give Ms. Holmes a chance to prove herself in such a short amount of time.

[Pl.'s Br., Doc. No. 13, p.7 (internal citation omitted)]. Despite the fact that Ms. Holmes' own deposition shows that Ms. Robinson became her supervisor in May of 2007[2], rather than June of 2007 [*See* Pl.'s Dep., Def.'s Ex. 1, Doc. No. 11, p.128], the fact that Ms. Robinson may not have given "Ms. Holmes a chance to prove herself in such a short amount of time" is irrelevant. The record is replete with evidence that Ms. Holmes was performing at an unacceptable level long before Ms. Robinson became her superior.

Further, while Ms. Holmes argues that she did not have enough time under Ms. Robinson's supervision to *complete* the tasks required of her in the July 24, 2007 action plan, it is undisputed that on July 31, 2007 Ms. Holmes had not even bothered to *begin* adhering to the plan. Finally, and most importantly, even if Ms. Robinson *did* terminate Ms. Holmes without giving her a meaningful chance to complete the July 24, 2007 action plan, *there is no evidence that this fact demonstrates a pretext for age discrimination*.

III. Rumors Circulating Amongst Other Chase Employees

In her deposition, Ms. Holmes outlined two separate instances where she was made aware of "rumors" circulating amongst the employees at Chase regarding potential age discrimination: 1) rumors that Chase wanted to terminate older, higher-paid employees to save money [*See* Pl.'s Dep., Def.'s Ex. 1, Doc. No. 11, pp.71-72]; and 2) rumors that, during her medical leave, others were speculating as to whom might take over as branch manager at the West Chicago/Telegraph branch [*See* Pl.'s Dep., Def.'s Ex. 1, Doc. No. 11, pp.72-75]. Neither of these "rumors" constitute admissible evidence demonstrating that Chase's decision to

---

[2] Further, Ms. Holmes admits that Ms. Robinson, *as Ms. Holmes' supervisor,* attended the meeting with Ms. Holmes and Mr. Alia in May of 2007.

terminate Ms. Holmes was a pretext for age discrimination.

Again, under *Town*, Ms. Holmes has the burden to come forward with "*admissible evidence*" tending to show that Chase's decision was a pretext for discrimination. *Town*, 455 Mich. at 697 (emphasis added). The Federal Rules of Evidence define "hearsay" as follows:

> "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

FED. R. EVID. 801(c). Unless an exception applies, hearsay evidence is generally not admissible. FED. R. EVID. 802. In this case, both types of statements relied upon by Ms. Holmes are hearsay - each is an out of court statement by a third party, and each is offered for its own truth: 1) that Chase sought to terminate older, higher-paid employees; and 2) that others at Chase thought Ms. Holmes would not return from her medical leave as a branch manager.[3]

The Sixth Circuit considered - and rejected - the admissibility of similar evidence purported to demonstrate pretext in *Mitchell v. Toledo Hospital*, 964 F.2d 577 (6th Cir. 1992). In *Mitchell*, an African-American employee filed an action against her employer, claiming she was the victim of age and race discrimination. In support of her allegations, the plaintiff supplied an affidavit describing how she had heard that other, white, employees had engaged in similar conduct as the plaintiff was alleged to have committed, without being fired. *Mitchell*, 964 F.2d at 584. The Sixth Circuit rejected the plaintiff's claim that such information evidenced a pretext for discrimination:

> . . .[W]ith regard to Plaintiff's hearsay Affidavit, the District Court correctly found that the Affidavit was not a proper Rule 56(e) affidavit *because it was not made on personal knowledge and did not set forth "facts" that would be*

---

[3] Additionally, the second of these statements - that others were speculating that Ms. Holmes may not return as a branch manager following her medical leave - does nothing to show that Chase sought to terminate Ms. Holmes *due to her age*.

> *admissible into evidence*. Even if the Court were to consider the Affidavit, the statements contained therein *are nothing more than rumors, conclusory allegations and subjective beliefs* which are wholly insufficient evidence to establish a claim of discrimination as a mater of law.

*Mitchell*, 964 F.2d at 584-85 (emphasis added).

In the instant case, as in *Mitchell*, Ms. Holmes freely admits that the substance of these rumors are merely the speculation of her peers. [*See* Pl.'s Dep., Def.'s Ex. 1, Doc. No. 11, pp.71-75]. Furthermore, unlike *Mitchell*, the statements proffered here *are not even offered in the context of a valid Rule 56(e) affidavit*. Rather, Ms. Holmes relies on vague, inadmissible second-hand reports of rumors in support of these statements, instead of coming forward with affidavits attested to by the statements' declarants. Therefore, these hearsay statements by Ms. Holmes' peers do not raise a genuine issue of material fact regarding Chase's termination of Ms. Holmes being a pretext for age discrimination.

IV. <u>Ms. Holmes' Subjective Feelings</u>

Finally, in her deposition Ms. Holmes testified that she felt Ms. Robinson and Mr. Alia were treating her differently than Ms. Holmes' peers were treated by their superiors:

> Sometimes I felt like it was a little different type of pressure being put on me in terms of doing it and do it now, because of that that I don't think my peers got this in talking to them.

[Pl.'s Dep., Def.'s Ex. 1, Doc. No. 11, p.173]. Again, under *Mitchell*, "subjective beliefs. . . are wholly insufficient to establish a claim of discrimination as a matter of law." *Mitchell*, 964 F.2d at 585; see also *Fix v. Unisys Corp.*, 782 F.Supp. 343, 346 (E.D. Mich. 1991)("Plaintiff's bare conclusory statements will not overcome a motion for summary judgment"). A similar attempt to show a pretext for discrimination was rejected by the Michigan Supreme Court in *Hazle v. Ford Motor Co.*, 464 Mich. 456 (2001). In *Hazle*, the plaintiff felt that she was denied a

promotion based upon her race. In rejecting her claim, the *Hazle* Court held as follows:

> The essence of defendant's stated reasons for decision to hire [another] over plaintiff was that they did not believe that plaintiff was qualified as [another] for the office manager position. While plaintiff was not required to seek to show that she was in fact more qualified that [another] in order to survive summary disposition, plaintiff *was* required to demonstrate that the evidence in this case would permit a jury to find that defendants' explanation was a pretext for race discrimination. *Other than her subjective claim that she was more qualified than [another], plaintiff has offered nothing to support her claim that defendants acted with racial animus*. In our view, the following testimony from plaintiff's deposition accurately captures the dispute in this case:
>
> Q: Why do you believe that your race had anything to do with the selection of [another] over you?
> A: Well, *because I felt I was very qualified for the position and just from my own observation I just feel that I'm a better qualified person*. They hired a Caucasian woman. So I felt it was a racial issue.
> Q: Do you have any other reason, any reason at all for thinking that your race had anything to do with the selection of [another] over you?
> A: No.

*Hazle*, 464 Mich. 456, 476-77 (emphasis added).

The deposition testimony quoted by the *Hazle* Court - deemed insufficient to show discriminatory pretext - is analogous to that proffered by Ms. Holmes in the instant case. When asked to support her assertion that Ms. Robinson and Mr. Alia were harder on her than on other employees, Ms. Holmes admitted that her proof was limited to "a feeling, and rumor and innuendo, that's it." [Pl.'s Dep., Def.'s Ex. 1, Doc. No. 11, p.173]. Such does not establish discriminatory pretext.

## CONCLUSION

For the reasons explained above, the Court **HOLDS** that Ms. Holmes has failed to demonstrate a genuine issue of material fact that Chase's proffered reasons for terminating Ms. Holmes were a pretext for age discrimination. Therefore, the Court **GRANTS** Chase's Motion

for Summary Judgment [Doc. No. 11], and **DISMISSES** this case in its entirety.

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: January 20, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 20, 2010, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager